JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellants, Michael and Maureen Spolar, appeal the trial court's decision to grant summary judgment in favor of appellees, Joseph and Zita Poecze. After a thorough review of the arguments and for the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} The present case arises from a residential purchase agreement entered into between the Spolars and the Poeczes. Some time in 2004, Joseph approached Zita with the prospect of downsizing to a smaller home since their children were grown, and she reluctantly agreed. Their Mayfield Village home was listed for sale, and on September 22, 2004, the Spolars made an offer to purchase the home. The contract, which was designed by the Spolars and heavily slanted in their favor, delayed the date of closing until July 30, 2005 — several months in the future. In addition, the contract gave the Spolars the exclusive right to cancel the sale without consequence for nearly half a year and did not require them to submit any earnest money until six months after the contract was signed.
 {¶ 3} Shortly after the parties entered into the purchase agreement, Zita's mental health began to decline. During the selling process, Zita had been in good health; however, that changed during the home inspection process. As a part of the purchase agreement, the Spolars arranged for a full inspection of the Poeczes' home. When the inspector arrived, it reminded Zita of the home invasions she had *Page 4 
experienced as a child in Hungary.[1] During the inspection of her home, Zita began to cry uncontrollably and suffered a nervous breakdown. After seeking medical treatment, she was diagnosed with post-traumatic stress disorder, major depression, and panic disorder with agoraphobia. During Zita's treatment, her physician, Dr. Donald Ebersbacher, advised the Poeczes not to sell their home.
 {¶ 4} As a result of Zita's diagnosis and the advice given by her treating physician, Joseph knew that he could not move her from their home. Consequently, he immediately contacted the Spolars — only ten days after the purchase agreement was signed and more than ten months prior to the projected closing date — and notified them that the sale had to be cancelled. Joseph offered to pay the Spolars any out-of-pocket expenses they had incurred for the home inspection as well as any other costs related to the failed purchase.
 {¶ 5} The Spolars refused to cancel the contract, and on February 10, 2005, they filed a claim for declaratory judgment, specific performance, breach of contract and anticipatory breach of contract against the Poeczes. Both parties moved for summary judgement, and on January 30, 2006, the trial court granted summary judgment in favor of the Poeczes on the issue of specific performance. On July 18, 2006, the Spolars voluntarily dismissed their remaining claims, and on August 7, *Page 5 
2006, they filed a notice of appeal. They bring this appeal asserting one assignment of error for our review.
 {¶ 6} "I. The trial court abused its discretion by granting summary judgment in favor of Appellees as to Appellants' claim for specific performance because the Purchase Agreement was a valid and enforceable contract, its terms were fair and unambiguous, there was no contingency met or change in circumstances that permitted non-performance, and the balance of equities favors Appellants."
 {¶ 7} The Spolars argue that the trial court erred when it granted summary judgment in favor of the Poeczes. They assert that the purchase agreement entered into between the parties was valid and enforceable, warranting the equitable remedy of specific performance. They contend that because they are entitled to specific performance under law, summary judgment should have been granted in their favor. We disagree.
 {¶ 8} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse *Page 6 
to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.
 {¶ 9} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330,106 S.Ct. 2548, 91 L.Ed. 2d 265; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.
 {¶ 10} In Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of therecord which demonstrate the absence of a genuine issue of fact ormaterial element of the nonmoving party's claim." Id. at 296. (Emphasis in original.) The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 11} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, *Page 7 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990),71 Ohio App.3d 46, 50, 593 N.E.2d 24; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741, 607 N.E.2d 1140.
 {¶ 12} After a review of the case before us, we do not find that the trial court erred when it granted summary judgment on the issue of specific performance in favor of the Poeczes. Monetary damages are traditionally awarded in cases involving a breach of contract; however, where a party seeks the extraordinary remedy of specific performance, certain elements must be fulfilled before the trial court can make such an award. This court specifically held in Poppy v. Whitmore (Sept. 9, 2004), Cuyahoga App. No. 84011, that a trial court may only exercise its discretion to award the remedy of specific performance if the following are satisfied:
 {¶ 13} "1. The contract must be concluded, certain, unambiguous, mutual and based upon valuable consideration;
 {¶ 14} "2. It must be perfectly fair in all parts; it must be free from any misrepresentation or misapprehension, fraud, or mistake, imposition or surprise;
 {¶ 15} "3. It cannot be an unconscionable or hard bargain;
 {¶ 16} "4. Its performance must not be oppressive upon the defendant; and *Page 8 
 {¶ 17} "5. Finally, it must be capable of specific execution through a decree of the court."
 {¶ 18} The holding in Poppy explicitly provides that specific performance cannot be awarded if it would be oppressive upon a defendant. In addition, Poppy also states that the trial court may exercise its discretion in making such a determination and will only be reversed upon an abuse of discretion. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 50 OBR 481, 450 N.E.2d 1140.
 {¶ 19} In the present case, it is clear that specific performance would be oppressive upon the Poeczes, thus the trial court's actions were not unreasonable, arbitrary, or unconscionable when it declined the award.
 {¶ 20} When Joseph approached Zita with the prospect of selling their home, she reluctantly agreed; however, as the process continued, she began to experience anxiety, which resulted in a nervous breakdown. After seeking medical treatment, Zita was diagnosed with several mental ailments. In addition, her treating physician concluded that her fragile mental state was directly related to the sale of her home. During the litigation process, Zita submitted a report to the trial court from her medical experts, Dr. Mark Horowitz and Linda Denallo, who had an opportunity to review her medical records and diagnosis from her treating physician. The report provided in pertinent part: *Page 9 
 {¶ 21} "Mrs. Poecze's diagnosis of PTSD [post-traumatic stress disorder] is a result of the loss of her childhood home along with the stress of the Germans and Russians in the home. When someone experiences something intensely disturbing and traumatic it does not go away. It becomes part of the person's experience and can result in many disturbing symptoms. The trauma can be experienced years later. The feelings and emotions which were felt at the time can be felt as if they are happening in the present. As a result, many feelings can emerge which are normal and natural reactions such as: anxiety, intrusive thoughts, sleep disturbances, anger, isolation, and fear of the same thing happening again. Individuals can have poor concentration. It can also affect them physically. They can have relationship problems. Mrs. Poecze has experienced all of this. She has stated this brings back painful memories. `I feel like I'm back in Europe and the Russians are coming into our home and taking our things.'
 {¶ 22} "In my opinion if Mrs. Poecze loses her home it will exacerbate her depression and anxiety. She will have grief issues over the loss of her home. It will also cause her to relive trauma from childhood."
 {¶ 23} It is clear that Zita's reluctance to sell her home was not merely caused by the physical manifestations of seller's remorse, but rather a serious mental condition resulting from a past traumatic experience. This is a unique circumstance where several medical experts concluded that ordering specific performance would only exacerbate Zita's mental state, causing her great harm. *Page 10 
 {¶ 24} Although Joseph and Zita entered into a valid purchase agreement with the Spolars, the facts strongly indicate that the remedy of specific performance would be extremely oppressive upon Zita. Accordingly, the trial court did not abuse its discretion when it declined to award specific performance to the Spolars.
 {¶ 25} In the present case, all of the elements necessary for the remedy of specific performance were not fulfilled. Because no genuine issues of material fact remain to be litigated regarding specific performance, the trial court did not err when it granted summary judgment in favor of the Poeczes. Accordingly, the Spolar's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, J., CONCURS; MELODY J. STEWART, J., DISSENTS (WITH SEPARATE OPINION)
[1] During Zita's childhood in Hungary, Nazi troops invaded her home, confining her and her family to two rooms. When the Nazis evacuated Hungary, the Russian military seized the home, forcing Zita and her family into homelessness. When Zita and Joseph were married, they immigrated from Hungary to the United States and built their home in Mayfield Village, where they raised their family.